Case 06-03188-bjh Doc 35 Filed 01/12/07 Entered 01/12/07 11:05:09 Page 1 of 9

U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**
TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed January 12, 2007**                            **United States Bankruptcy Judge**

---

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SHEIDA RASTEGAR** | § | CASE NO. 05-84343-BJH-7 |
| | § | |
| Debtor. | § | |
| | § | |
| **LISA BORTELL,** | § | |
| Plaintiff, | § | ADV. PRO. 06-3188-BJH |
| - against - | § | |
| **SHEIDA RASTEGAR,** | § | |
| Defendant. | § | |

### MEMORANDUM OPINION AND ORDER

Before the Court is the Third Amended Complaint (the "Complaint") filed by Lisa Bortell ("Bortell") against Sheida Rastegar (the "Debtor" or "Rastegar"), asking that this Court liquidate her

debt and then except it from the Debtor's discharge in accordance with §§ 523(a)(2)(A) and/or 523(a)(4). The Court has core jurisdiction over the parties and the issues raised in the Complaint in accordance with 28 U.S.C. §§ 1334 and 157(b)(2)(I). The Court's findings of fact and conclusions of law follow.

## I.  Factual Background

Initially, the Court notes that this case has proven to be quite difficult to decide, not because the law is in conflict or the parties disagree over the legal issues. Rather, this case is difficult because of the material factual disputes, and the fact that neither party introduced any evidence to corroborate her/his version of the underlying facts. In short, the Court finds itself in the unfortunate position of having only Bortell's and Rastegar's very brief testimony (the evidence was presented here in less than 3 hours) and two documents from which to attempt to discern the truth regarding both the nature of the parties' relationship and the other relevant, underlying facts. And, Bortell's and Rastegar's respective versions of the underlying facts here are diametrically opposed in virtually every material respect.

For example, Bortell testified that she was referred to Rastegar, an attorney, in early February, 2001 by a mutual friend, Louis O'Hara ("Louis"), and that she then called Rastegar on the telephone and asked for an appointment to discuss legal issues surrounding her mother's holographic will. According to Bortell, a couple of days after this first telephone call, she met Rastegar in person for the first time at his law office in Dallas. In contrast, while Rastegar agrees that he met Bortell through Louis, Rastegar testified that he met Bortell while he was receiving a massage from Louis at Louis' home. Specifically, Rastegar testified that Bortell walked into Louis' home during his massage and that Louis introduced them after Rastegar's treatment was concluded. Rastegar further testified that

Bortell and he exchanged personal information before the end of the evening and that a romantic, ultimately intimate, relationship began shortly thereafter. Bortell denies the existence of *any* personal relationship with Rastegar, claiming that the one time Rastegar made advances to her (around July 25, 2003 or so), she rebuffed him.[1]  Bortell claims their relationship was purely a professional one – specifically, an attorney-client relationship at all relevant times.

To support his claim of a personal, not professional, relationship, Rastegar testified that Bortell left personal items at his apartment – *i.e.*, therapy candles, a rug, a picture of her daughter (on his mantle) – and that Bortell loaned him her SUV so that he could take his son and his son's belongings to Laredo, when his son started school in Mexico. Rastegar further testified that Bortell drove his Honda Accord for several months when her vehicle was inoperable. In contrast, Bortell denies each of these facts. She testified that she did not leave anything at Rastegar's apartment, that she was only in his apartment the one time in late July 2003 when she rebuffed his sexual advances, that she never loaned him her SUV, and that she never borrowed or drove his Honda.

With this basic understanding of the degree of inconsistency in the parties' respective versions of the facts here, let us turn to Bortell's basic complaint. She complains that she gave Rastegar $38,000 to invest for her in a real estate venture of some type based upon Rastegar's misrepresentations regarding the alleged investment. According to Bortell, Rastegar offered to invest her $38,000 in a "low risk" corporate real estate deal, guaranteed her a 5% return on her investment,

---

[1] Specifically, Bortell testified that a couple of days after she gave Rastegar $38,000 to invest in real estate for her, she called him and asked if the real estate paperwork was ready to be signed yet. When Rastegar answered "no," Bortell testified that she asked for a return of her monies and he refused to return them. And, according to Bortell, shortly thereafter Rastegar asked her out to dinner. When she arrived at his apartment, she expected to be taken out to dinner. Instead, Rastegar fixed her a Persian meal. According to Bortell, at some point in the evening, Rastegar made sexual advances to her, which she rebuffed.

**Memorandum Opinion and Order**                                                                                                                                   **Page 3**

and induced her to invest with him by telling her that he had successfully invested hundreds of thousands of dollars (both his and other clients' monies) in similar deals before.

In contrast, according to Rastegar, Bortell, his girlfriend, overheard a telephone conversation wherein he requested a loan from a third-party. At the conclusion of the telephone call, Bortell told him that she would make him a $38,000 loan. According to Rastegar, after some discussion, they agreed on the terms of a 13-month loan. Rastegar bolsters his version of the facts by pointing to Plaintiff's Exhibit 2, a one-page, six-line document dated July 23, 2003 that plainly says that Bortell was loaning Rastegar $38,000 for 13 months at 5% interest, with Rastegar to make montly payments of $1,000 to Bortell beginning on September 1, 2003. Rastegar testified that he made five (5) payments to Bortell on the loan, and that each check bore the notation "loan payback." According to Rastegar, his deteriorating financial situation did not permit him to make further payments to Bortell.

While Bortell agrees that Rastegar made five (5) payments to her, she did not recall such a notation on his checks. Moreover, Bortell explains Plaintiff's Exhibit 2 away as a further misrepresentation on Rastegar's part. According to Bortell, when she gave him the $38,000 on July 23, 2003, Rastegar told her that the paperwork for the real estate investment was not ready, and explained that Plaintiff's Exhibit 2 was just to protect her until the other documents were ready for her signature. Bortell also testified that she barely glanced at Plaintiff's Exhibit 2, having signed it "less than a minute" after it was handed to her, relying instead on Rastegar's contemporaneous verbal representations to her. Bortell further testified that Rastegar told her the $38,000 would be placed into his trust account until the real estate paperwork was signed. Finally, Bortell testified that the real estate investment paperwork was never ready, and when she asked for her money back,

Rastegar told her that it was "locked in" and could not be returned.

Rastegar denies having any real estate investments of his own, denies having ever invested any client funds in real estate, denies having offered a real estate investment to Bortell, and generally expresses bewilderment at Bortell's version of the story. According to Rastegar, he does criminal defense and plaintiff's personal injury work, and knows nothing about real estate deals.

## II.     Legal Analysis

Armed with this understanding of the facts, let us turn to the legal issues raised by the Complaint. As noted previously, Bortell seeks a money judgment against Rastegar for (i) the balance of the monies owing to her – *i.e.*, $33,000 together with the promised 5% interest, and (ii) punitive damages of at least three times her actual damages. Moreover, Bortell seeks a determination that the money judgment is not dischargeable in Rastegar's bankruptcy case in accordance with §§ 523(a)(2)(A) or 534(a)(4) of the Bankruptcy Code.

As a predicate legal matter, the Court notes that exceptions to discharge should be construed in favor of the debtor. *Fezler v. Davis (In re Davis)*, 194 F.3d 570 (5th Cir. 1999). The creditor bears the burden of proof and must establish each of the required elements of a claim under § 523(a) by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279 (1991); *In re Acosta*, 406 F.3d 367 (5th Cir. 2005).

### A.     Section 534(a)(2)(A)

Section 523(a)(2) provides that a discharge under section 727 does not discharge an individual debtor from any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-

(A) false pretenses, a false representation, or actual fraud, other than a statement

respecting the debtor's or an insider's financial condition . . .

11 U.S.C. §523(a)(2)(A). Although the general purpose of the Bankruptcy Code is to provide debtors with a fresh start, "section 523(a)(2)(A) is not designed to protect debtors; rather, it is designed to protect the victims of fraud." *In re Quinlivan*, 434 F.3d 314, 319 (5th Cir. 2005).

In *Recoveredge LP v. Pentecost*, 44 F.3d 1284 (5th Cir. 1995), the Fifth Circuit distinguished between actual fraud on the one hand, and false pretenses and representations on the other. According to the Fifth Circuit, in order to be a false representation or false pretense, the representation must have been a knowing and fraudulent falsehood, describing past or current facts, that was relied upon by the other party. *Id*. at 1293. And, in order to prove nondischargeability on an actual fraud theory, the creditor must establish that the debtor made representations; at the time they were made the debtor knew they were false; the debtor made the representations with the intention and purpose to deceive the creditor; that the creditor relied on such representations; and that the creditor sustained losses as a proximate result of the representations. *Id*. at 1293. In coming to its decision in *Recoveredge*, the Fifth Circuit declined to follow other circuits which had applied a uniform standard to all debts under section 523(a)(2).

More recently, however, the Fifth Circuit has stated, without distinguishing between the different torts encompassed by section 523(a)(2)(A), that for a debt to be non-dischargeable under that section, the creditor must show that (1) the debtor made a representation; (2) the debtor knew the representation was false; (3) the representation was made with the intent to deceive the creditor; (4) the creditor actually and justifiably relied on the representation; and (5) the creditor sustained a loss as a proximate result of its reliance. *In re Acosta*, 406 F.3d 367, 371 (5th Cir. 2005).

An intent to deceive may be inferred from a reckless disregard for the truth or the falsity of

a statement combined with the sheer magnitude of the resulting misrepresentation. *Id*. Furthermore, silence as to material facts can constitute a false representation. *Id*.

Here, Bortell contends, and so testified, that (i) Rastegar made numerous misrepresentations to induce her to give him her entire savings – *i.e.*, the remaining $38,000 she had inherited from her mother, (ii) Rastegar knew the representations were false, (iii) the representations were made with the intent to deceive her, (iv) she actually and justifiably relied on the representations, and (v) she sustained a loss as a proximate result of her reliance.

Conversely, Rastegar contends, and so testified, that (i) he never discussed a real estate investment with Bortell, (ii) Bortell, his girlfriend, offered to make him a $38,000 loan, (iii) he accepted her offer, and (iv) they signed Plaintiff's Exhibit 2, which evidences the loan and his agreement to repay it.

In light of the dramatically different versions of the underlying facts, in order to determine if Bortell has carried her burden of proof here, the Court must attempt to decide which party's version of the underlying facts is true. In short, the Court must decide which of the witnesses – Bortell or Rastegar – is more credible. Credibility depends upon such factors as the witness's demeanor and tone of voice, whether there are documents or other objective evidence which contradict the witness's testimony, and whether the witness's story itself is so internally inconsistent or implausible on its face that a reasonable fact finder would not credit it. *Anderson v. City of Bessemer City, N.C.,* 470 U.S. 564, 575 (1985); *In re White,* 128 Fed. Appx. 994, 999 (4th Cir. 2005) (unpublished disposition); *Matter of Complaint of Luhr Bros., Inc.*, 157 F.3d 333, 338 (5th Cir. 1998).

On the very terse evidentiary record presented here, the Court is simply unable to determine which party is testifying falsely. It is obvious that one of the parties is lying – *i.e.*, either Rastegar

and Bortell had a personal, romantic relationship or they did not; either Rastegar offered to invest Bortell's funds in a real estate deal of some type or he did not; and/or either Bortell offered to loan Rastegar money or she did not. However, because neither party offered any corroborating evidence to support her/his testimonial version of the underlying facts here, the Court has no other evidence to look to in its effort to determine which party's version of the facts is more credible. Moreover, each party's version of the facts was internally consistent. And, there was nothing about the demeanor of either witness that caused the Court to find one witness more credible than the other. In short, the evidentiary record is a tie. And, by definition, when the evidence is equally divided, the party upon whom the burden of proof lies – here, Bortell – has failed to carry her burden of proof. Accordingly, the Court concludes that Bortell has failed to establish, by a preponderance of the evidence, the required elements of her § 523(a)(2)(A) claim.

B.  Section 523(a)(4)

Under § 523(a)(4), a debt "for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny" may not be discharged in bankruptcy. Bortell relies solely upon the existence of the attorney-client relationship to create the "fiduciary capacity" required by § 523(a)(4), and argues that the "fraud" Rastegar committed while acting as her counsel is the same "fraud" as is alleged in her § 523(a)(2)(A) claim – i.e., that Rastegar represented there was a low risk real estate investment with a guaranteed 5% return that he would invest her monies in when in fact there never was such an investment.

Of course, Rastegar denies the existence of an attorney-client relationship, claiming instead that they were boyfriend-girlfriend, in addition to his denials of any discussion of any real estate investment. And, as an evidentiary matter, the record remains a tie here too.

For the reasons previously stated, the Court is simply not in a position to objectively determine which party's version of the facts is true. Accordingly, the Court concludes that Bortell failed to carry her burden of proof by a preponderance of the evidence, and her claim under § 523(a)(4) fails.

### III. Conclusion

The parties stipulated that Rastegar owes Bortell at least the sum of $33,000. *See* Joint Pre-Trial Order, p. 3 ("The parties admit that Plaintiff tendered $38,000 to Defendant; that Defendant has a credit of $5,000 for payments he made back to Plaintiff . . ."). However, Bortell failed to prove, by a preponderance of the evidence, that she is entitled to recover punitive damages here[2] or that the $33,000 debt, together with interest at the agreed upon rate of 5% per annum, is non-dischargeable in Rastegar's bankruptcy case under either §§ 523(a)(2)(A) or (a)(4) of the Bankruptcy Code. Accordingly, Bortell shall have a judgment against Rastegar for $33,000, together with interest thereon at the agreed upon rate of 5% per annum, but all other relief requested in the Complaint shall be denied.

**SO ORDERED.**

### End of Order ###

---

[2]To recover punitive damages against Rastegar here, Bortell was required to prove "by clear and convincing evidence that the harm with respect to which [she] seeks recovery of exemplary damages results from (1) fraud; (2) malice; or (3) gross negligence." Tex. Civ. Prac. & Rem. Code § 41.003(a) (Vernon 2006). Because Bortell failed to prove her fraud case by a preponderance of the evidence, she clearly failed to satisfy the more exacting standard of clear and convincing evidence and her request for punitive damages likewise fails.